INZER, Justice:
Appellant Henry Bucklew was tried and convicted of constructive contempt in the Circuit Court of Jones County, Mississippi, and was sentenced to pay a fine of $300 and to serve sixty days in the county jail. The jail sentence was suspended on the condition of good behavior. From this conviction he appeals.
The principal assignment of error is that the State’s proof was insufficient to establish appellant’s guilt beyond a reasonable doubt and that the conviction was against the overwhelming weight of the evidence.
The evidence on behalf of the State establishes that on October 10, 1966, appellant was serving as Mayor of the City of Laurel. He had been indicted by the Grand Jury of Jones County on two felony charges which were pending trial before the Circuit Court of Jones County, then in session.
The evidence on behalf of the state established that the appellant on October 10, 1966, attempted to bribe W. O. Dillard, the district attorney, into having two felony cases pending in the Circuit Court of Jones County nolle prosequi. Not wanting to approach the district attorney di *917 rectly, appellant contacted Robert Cade, the president of Cade Advertising, Inc., and a close friend of the district attorney. Dillard, McMinn, a deputy sheriff, and Charles Pickering, the county attorney, agreed money should be accepted for use as evidence before the Grand Jury.
On Wednesday afternoon, October 12, acting upon the instructions of Dillard, Cade called appellant on two occasions. Dillard and Pickering listened on an extension telephone. The conversations were taped, introduced into evidence and the reporter’s transcript is in the record before us. While the conversation is in guarded language, during the first conversation the amount of money was discussed and during the second $500 was mentioned. It was to be channeled through the advertising agency to the district attorney. Appellant made no further contact and went to trial the next day. When the trial resulted in conviction, appellant told Cade that his attorney was going to attempt to delay the sentencing on grounds that a witness for the State was senile and that appellant did not want the district attorney to raise any strenuous objection to the incompetency of the witness.
A contract was discussed whereby Cade was to receive a check for $500, the balance of $1,500 to be paid at the rate of $200 per month for seven months and $100 on the eighth month. Acting upon the instructions of the district attorney, Cade withheld the contract from appellant and later was informed by the district attorney that he had reported the matter to the Court and was instructed to break off any further contact with appellant.
Cade’s testimony as to his reporting the original conversation with appellant and his reports of other contacts was corroborated by the district attorney, county attorney and the deputy sheriff. Dillard and Pickering also corroborated him as to the two telephone conversations that were tape recorded. They testified that from the time Cade reported the first conversation to them that Cade was acting on their instructions in an attempt to obtain evidence to present to the Grand Jury. This was also corroborated to some extent by Ray Baldwyn, an attorney.
The appellant testified Cade suggested he bribe the district attorney and told the appellant:
I got a proposition for you, and it’s got four points to it. One is that Mr. Dillard is interested, or that Chet is interested. Second, it’s got to be handled —done to night. The third thing is $2,000 cash. Seems like there was a fourth, and I don’t remember that, but there was a — oh, yes, it had to be through another person other than Mr. Dillard personally. I believe that’s the other thing.
Appellant denied ever offering to pay anyone any sum of money as a bribe in either one or both of the cases that were pending against him. He testified that his attorney advised him not to make any direct refusal but to merely go along and listen to Cade’s conversation. He stated that the recorded telephone conversation was a result of Cade’s telling him that appellant needed advertisements to overcome the unfavorable publicity he had received and that he was considering employing Cade for this purpose when he had the telephone conversations. Appellant testified that he listened to Cade’s proposition about the bribe in order to “string him along.”
After the circuit judge received information that there was a probability of attempted bribe, he appointed the Honorable Matthew Harper, Jr. and the Honorable Ernest W. Graves of the Laurel Bar to investigate. After investigation these attorneys filed the information in this case and represented the State in the presentation of the case.
In Brewer v. State, 176 Miss. 803, 170 So. 540 (1936) this Court gave the following definition of constructive contempt :
When there is a deliberate purpose or calculation to corrupt the administra *918 tion of justice and that purpose or calculation is accompanied by a definite overt act or declaration on the part of the contemnor designed to carry that purpose or calculation into effect, the contempt is complete; and the failure of the design becomes immaterial, except as it may have some place in considering the punishment to be inflicted. 176 Miss, at 809, 170 So. at 541.
The circuit judge in deciding this case used this definition as a guideline. He said:
I specifically find from the evidence, beyond a reasonable doubt, that the defendant initiated a solicitation of a bribe to the district attorney to induce him to corruptly dismiss pending charges against the defendant, and that he accompanied the same by overt acts designed to carry that purpose into effect.
In other words, on the crucial issue the court accepted the testimony of the witness Cade and rejected the testimony of the appellant.
In the review of convictions in •contempt cases, we have always reserved the right and responsibility of deciding from the record whether the State has established the guilt of the defendant and in doing so, we are not bound by the general rule that we will not reverse unless the trial judge is manifestly wrong. Jenkins v. State, 242 Miss. 627, 136 So.2d 205 (1962); Melvin v. State, 210 Miss. 132, 48 So.2d 856, 49 So.2d 837 (1950); and Brannon v. State, 202 Miss. 571, 29 So.2d 916 (1947).
However, the foregoing statement does not mean that this Court will arbitrarily refuse to accept the finding of the trial judge made from conflicting evidence. We have always recognized that the trial judge is in a much better position to judge the credibility of the witness. In Spiers v. State, 231 Miss. 307, 94 So.2d 803 (1957), Justice Holmes writing for the Court quoted a dissertation of an eminent jurist as to why deference should be given to a trial judge’s opinion in passing on conflicting evidence:
The courts are fond of saying that deference should be given to the trial Chancellor. He sees and hears much, that the appellate court cannot see and hear. We well know there are things of pith that cannot be preserved in or shown by the written page. Truth does not always stalk boldly forth naked but modest withal, in a printed abstract in a court of last resort. She oft hides in nooks and crannies visible only to the mind’s eye of the judge who tried the case. To him appears the furtive glance, the blush of conscious shame, the hesitation, the sincere or the flippant or sneering tone, the heat, the calmness, the yawn, the sign, the candor or lack of it, the scant or full realization of the solemnity of an oath, the carriage and mien. The brazen face of the liar, the glibness of the schooled witness in reciting a lesson, or the itching overeagerness of the swift witness, as well as the honest face of the truthful one, are alone seen by him. In short, one witness may give testimony that reads in print, here, as if falling from the lips of an angel of light, and yet not a soul who heard it, nisi believed a word of it; and another witness may understand that it reads brokenly and obscurely in print, and yet there was that about the witness that carried conviction of truth to every soul who heard him testify. Therefore, where an issue in equity rests on the credibility of witnesses, the upper court may with entire propriety rest somewhat on the superior advantage of the lower court in determining a fact. 231 Miss. 314, 315, 94 So.2d 806, 807.
We have carefully reviewed the record in this case and we cannot accept the argument of appellant that the evidence on behalf of the State presents a state of facts so fantastic to be utterly and completely unbelievable. Appellant makes much of the evidence relative to the at *919 tempt on the part of the district attorney to get appellant to pay over some money to use as evidence. He points out that such evidence was unnecessary to establish a charge on which appellant was tried. However, we are not called upon here to decide whether the district attorney, after learning of appellant’s efforts to get him to accept a bribe, should or should not have attempted to secure additional evidence to support this charge and perhaps other charges. The evidence shows that the witness Cade is a native of Florida. He graduated from high school at Greenville, Mississippi. He attended the University of Southern Mississippi, is married and has one child. He worked for a television station, WDAM, for ten years. He moved to Laurel in 1964 and went into business for himself in 1966. He is a member of the official board of the Franklin Methodist Church in Laurel. The district attorney is also a member of the board of this church and he and the district attorney had been friends since Cade moved to Laurel. There is no testimony of a nature to show any motive on the part of Cade to falsely accuse appellant. Neither do we think that the fact that Cade only had a small bank account is controlling. We are unable to accept appellant’s inference that this was a scheme by Cade or by Cade and the district attorney to either get some money from him or to entrap him.
We have carefully considered the other assignments of error and we find no reversible error therein. The only other point made that merits any discussion is the assignment relative to the court’s action in sustaining the objection to the following question asked appellant on direct examination. “Now, then, Mr. Bucklew, did you ever have any intention of giving Mr. Cade or Mr. Dillard $2,000 or any other sum of money?” However, appellant testified to the next questions that he never at any time offered to give Cade $2,000 or any other sum of money and he never offered to send Mr. Dillard that sum of money or any other amount of money through Cade. It is obvious that if allowed to answer the question to which the objection was sustained, his answer would have been that he did not offer to give them any sum of money and had no intention to do so. We are unable to see how appellant was prejudiced by this ruling of the court. The error, if any, was harmless under these circumstances.
For the reasons stated, we hold that the circuit judge’s decision is supported by competent and credible evidence and for that reason, this case should be, and is hereby, affirmed.
Affirmed.
ETHRIDGE, C. J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.